IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NC RSOL and JOHN DOE 1, also        )
known as CHRISTOPHER KYLE           )
WOODRUFF,[1]                         )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )          1:18CV597
                                    )
SEAN BOONE[2] and LORRIN            )
FREEMAN, each in his or her         )
official capacity as District       )
Attorney, and JOSHUA STEIN, in      )
his official capacity as            )
Attorney General of the State       )
of North Carolina,                  )
                                    )
            Defendants.             )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

    This case is now before the court on Defendants' motion to

dismiss the complaint for lack of standing, sovereign immunity,

---

        [1] John Doe 2, originally listed as a plaintiff in this case,
was terminated following the notice of voluntary dismissal filed
on February 19, 2019. (<u>See</u> Doc. 20.)

        [2] Effective January 2019, Sean Boone has replaced Pat
Nodalski as the District Attorney for Alamance County. <u>See</u>
http://www.ncdistrictattorney.org/15A/home.html. Pursuant to
Fed. R. Civ. P. 25(d), Mr. Boone is automatically substituted as
a party defendant for all claims asserted against Mr. Nodalski
in his official capacity as former District Attorney. North
Carolina has also renumbered its prosecutorial districts, such
that Mr. Boone is now the District Attorney for District 17,
rather than District 15A. <u>See</u> N.C. Gen. Stat. § 7A-60(a)(1).

abstention, and failure to state a claim. (See Doc. 12.) This court has reviewed the pleadings in this case and, for the reasons that follow, finds that Defendants' motion to dismiss should be granted in part and denied in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff NC RSOL is a nonprofit organization that "advocate[s], both legislatively and legally, for the rational reform of statutes, regulations, and ordinances regarding sex offender registries and legal restrictions placed upon registrants." (Complaint ("Compl.") (Doc. 1) ¶ 42.) As initially filed, the complaint also named two individuals as Plaintiffs: John Doe 1 and John Doe 2. Following this court's order denying Plaintiffs' motion to proceed under fictitious names, (Doc. 19), Plaintiff John Doe 2 voluntarily dismissed his claims pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (See Doc. 20.) Plaintiff John Doe 1 filed an affidavit stating his legal name and will be referred to herein as "Woodruff." (Doc. 21.)

Plaintiff Woodruff is a registered sex offender who resides in Alamance County, North Carolina, "and is subject to the restrictions contained in North Carolina General Statutes Article 27A, specifically including N.C.G.S. § 14-208.18(a)(3) and (a)(4)." (Compl. (Doc. 1) ¶ 22.) Woodruff was convicted of misdemeanor sexual battery of a thirty-year-old woman in 2009.

(Id. ¶¶ 23–26.) The complaint alleges that Woodruff "desires to attend church, to be able to go to the public library, to go to movies, sporting events, recreation parks, amusement parks, and other areas made off-limits to him by § 14-208.8(a)(3) [sic]." (Id. ¶ 95.) Woodruff also desires to attend North Carolina state and agricultural fairs and would do so but for the restrictions in N.C. Gen. Stat. § 14-208.18(a)(4). (See id. ¶¶ 107–17.)

Plaintiffs challenge the premises restrictions in N.C. Gen. Stat. §§ 14-208.18(a)(2) — (a)(4), which make it unlawful for registered sex offenders to knowingly be present at certain locations. Specifically, Plaintiffs allege that § 14-208.18(a)(2) is unconstitutionally "overbroad in violation of the First and Fourteenth Amendments to the United States Constitution," that § 14-208.18(a)(3) is both overbroad and unconstitutionally vague, and that § 14-208.18(a)(4) is overbroad. (Id. ¶¶ 119–30.)

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. R. 12(b)(1), (b)(2), and (b)(6), asserting sovereign immunity, lack of standing, and failure to state a claim. (Doc. 12.) Defendants filed a brief in support of their motion to dismiss. (See Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. 13).) Plaintiffs have responded opposing the motion to dismiss, (Pls.' Resp. and Mem. in Resp. to Defs.' Mot. to

Dismiss ("Pls.' Resp.") (Doc. 15)), and Defendants have not filed a reply brief.

## II. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." <u>Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). Despite this deferential standard, a court will not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." <u>Iqbal</u>, 556 U.S. at 678.

## III.  **STANDING**

### A.  **Legal Framework**

The federal judicial power extends only to cases or controversies within the scope of Article III of the United States Constitution. See U.S. Const. art. III, § 2. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. ____, ____, 136 S. Ct. 1540, 1547 (2016). Stated differently, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[3] Allen v. Wright, 468 U.S.

---

[3] Plaintiffs must establish these elements even for their facial overbreadth challenges. While the overbreadth doctrine permits a narrow exception to the rule that a party may assert only his or her own personal constitutional rights, it does not remove the injury requirement or the other aspects of traditional Article III standing. See Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 350 (6th Cir. 2007) ("Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment.") (citing Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392–93 (1988)); see also Peterson v. Nat'l Telecomms. & Info. Admin., 478 F.3d 626, 634 (4th Cir. 2007) ("[A] party asserting overbreadth standing must still demonstrate a distinct and palpable injury.") (internal quotation marks omitted).

737, 750 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

First, the plaintiff must have either suffered an injury or be in imminent fear of an injury. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). That injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations, quotation marks and footnote omitted). Plaintiffs generally may challenge alleged violations prospectively, provided that "the threatened injury is real, immediate, and direct." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974).

Second, the injury must be "fairly traceable" to the defendant's conduct. This does not mean that the plaintiffs must prove to an absolute certainty that the defendant's actions caused or are likely to cause injury; rather the "plaintiffs

need only show that there is a substantial likelihood that defendant's conduct caused plaintiffs' harm." Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 72 (3d Cir. 1990) (quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n.20 (1978)) (internal quotation marks omitted). While this standard excludes any injury that is "the result of the independent action of some third party not before the court, [it] does not exclude injury produced by determinative or coercive effect upon the action of someone else." Bennett v. Spear, 520 U.S. 154, 169 (1997) (quoting Lujan, 504 U.S. at 560–61). For example, in Bennett, the Supreme Court held that the plaintiffs had alleged an injury "fairly traceable" to the Fish and Wildlife Service when the Service's (technically advisory) biological opinion expressing concern about a land reclamation project's impact on endangered wildlife prompted a federal agency to enforce minimum reservoir levels. Id. at 167–71.

Third and finally, the law requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). This requirement "examines the causal connection between the alleged injury and the judicial relief requested" and asks

whether a judicial decision granting the requested relief will alleviate plaintiff's alleged injury. See Allen, 468 U.S. at 753 n.19 (explaining the distinction between the "fairly traceable" and "redressable" components of standing).

**B.   Analysis**

Prior to the Fourth Circuit's decision substantively affirming the district court in Doe v. Cooper, 842 F.3d 833 (4th Cir. 2016) ("Cooper III"), a former judge in this district found that registered sex offenders had standing to challenge the prior version of N.C. Gen. Stat. § 14-208.18(a). See Does 1–5 v. Cooper, 40 F. Supp. 3d 657 (M.D.N.C. 2014) ("Cooper I"). In its standing analysis, the court compared the facts of that case to the Fourth Circuit case Doe v. Virginia Department of State Police, 713 F.3d 745 (4th Cir. 2013), where the plaintiff lacked standing to challenge Virginia's sex offender premises restrictions (Va. Code § 18.2-370.5). The Virginia statute that criminalized sex offender presence in certain locations also contemplated that a registered sex offender could "petition the circuit court in the county or city where the school or child day center is located for permission to enter such property" and become exempt from certain restrictions upon obtaining a court order and permission from the school board or property owner. Va. Code § 18.2-370.5(c). The Fourth Circuit found that the

plaintiff had alleged only hypothetical injury because she had not actually attempted to access the restricted locations and had not utilized the petition process. Id. at 754 ("Because Doe has not attempted to petition a Virginia circuit court, the Board, or any church, it is far from clear whether she will ultimately be barred from entering these properties.").

By contrast, in Does 1–5 v. Cooper, a former judge in this district found that N.C. Gen. Stat. § 14-208.18 contained "no such petition option or opportunity to obtain an individualized degree of access to restricted locations." Cooper I, 40 F. Supp. 3d at 670. Further, the court noted that certain plaintiffs had either been arrested for violating subsections of § 14-208.18 (although the charges were later dismissed) or had obtained permission from property owners to attend events at restricted locations. Id. at 671. Noting that the "Plaintiffs need not actually violate § 14-208.18, or be proactively threatened with prosecution prior to violation, in order to have standing," the court determined that the plaintiffs had standing for their claims. Id. at 672.

N.C. Gen. Stat. § 14-208.18 still lacks any formal petition process by which a registered sex offender might obtain judicial approval of his or her presence at a restricted location. According to the complaint, the state trial judge in Woodruff's

-9-

2009 misdemeanor sexual battery case "determined that [Woodruff] is _not_ a threat to minors or others" and "directed that [Woodruff] would _not_ be subject to the premises, housing, and work restrictions contained in Article 27A (including N.C.G.S. § 14-208.18(a))." (Compl. (Doc. 1) ¶¶ 27-29.) However, the state of North Carolina objected to this ruling and Woodruff is now subject to the premises restrictions. (<u>Id.</u> ¶ 29.) Woodruff has refrained from being present at locations specified in §§ 14-208.18(a)(3) and (a)(4) due to his "resulting fear of arrest and prosecution." (<u>Id.</u> ¶ 96.)

Defendants argue, in support of their motion to dismiss, that "[i]t is purely speculative that there exists a time, location, or other area covered by N.C.G.S. § 14-208.18 that coincides with a viable and imminent threat to prosecute which could serve as an actionable injury for standing." (Defs.' Mem. (Doc. 13) at 8.) In other words, Defendants assert that any purported injury is merely hypothetical and not imminent. This court first notes several factors that distinguish this case from the earlier challenge in <u>Doe v. Cooper</u>. First, Plaintiffs have not alleged that Woodruff has been threatened with arrest, arrested or prosecuted for violating the revised version of § 14-208.18(a). Second, it appears from the complaint that Woodruff has not sought permission from any law enforcement

-10-

officer or property owner to be present at locations mentioned in subsections (a)(3) or (a)(4).

A plaintiff is never required to violate the law to obtain standing to challenge a statute. See, e.g., Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."). However, a general feeling of inhibition, without evidence suggesting that plaintiffs "would be prosecuted for the conduct they planned to engage in," is insufficient to establish standing. Younger v. Harris, 401 U.S. 37, 42 (1971). In this arena, the Supreme Court has generally found standing when a plaintiff professes a desire to engage in conduct that is facially prohibited by the challenged statute, the state has prosecuted individuals in the past, and the state has not disavowed future prosecution. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 161–66 (2014) (finding that the plaintiffs had standing to challenge a "false campaign statement" law restricting political speech, where one plaintiff was "the subject of a complaint in a recent election cycle" and complaints were common and carried potential criminal penalties); Holder v. Humanitarian Law Project, 561 U.S. 1, 15–16 (2010) (holding that the plaintiffs had standing to challenge

-11-

a terrorism material-support ban, where the government had prosecuted others under the statute and plaintiffs alleged "that they would provide similar support again if the statute's allegedly unconstitutional bar were lifted"); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 301–02 (1979) (plaintiffs had standing to challenge a "consumer publicity" restriction applicable to labor unions where they had engaged in past publicity campaigns, intended to do so in the future, had a reasonable fear that the statute might restrict these activities, and did not receive any state assurance of non-prosecution).

Here, as alleged, Woodruff is subject to a state trial court order that explicitly states he is subject to the premises restrictions in §§ 14-208.18(a)(3) and (a)(4). (Compl. (Doc. 1) ¶ 29.) This order is allegedly the result of the state's objection to earlier findings by Woodruff's trial court judge. (Id.) Even absent an order from the trial court, Woodruff would still be subject to the premises restrictions and to criminal liability for violating those restrictions. Without any formal petition process to obtain advance permission to enter such a location, Woodruff's only options are to (1) refrain from visiting any place where minors may congregate, to avoid running afoul of § 14-208.18(a)(3), or (2) visit these places and simply

hope that he does not run afoul of the statutory restrictions. Defendants acknowledge as much. (See Defs.' Mem. (Doc. 13) at 8 ("[T]he reality is that they can go to these places, but they must be vigilant as to who else is at the location when they chooses [sic] to visit.").)

This court's independent research[4] illustrates that North Carolina has prosecuted registered sex offenders for violating the premises restriction in § 14-208.18(a)(3).[5] See, e.g., Cooper I, 40 F. Supp. 3d at 671 ("Plaintiff John Doe 1 was arrested and charged with violating § 14-208.18 for attending a church where he had the pastor's permission to attend."); State v. Daniels, 224 N.C. App. 608, 610, 741 S.E.2d 354, 357 (2012) ("Defendant was indicted on two charges of violating N.C. Gen. Stat. § 14-208.18(a)(3)" for being present at a park) (footnote omitted);

---

[4] This court may, at the motion to dismiss stage, consider evidence outside of the pleadings to determine whether it has subject matter jurisdiction over the dispute. See, e.g., Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991).

[5] While this court finds no evidence that any sex offender has yet been prosecuted for violating § 14-208.18(a)(4), this subsection has only been in effect since September 1, 2016, and is also likely to be used less frequently because state fairs occur only at specific times throughout the year. Therefore, this court finds that Woodruff has standing to challenge subsection (a)(4). See, e.g., Am. Booksellers, 484 U.S. at 393 ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

-13-

State v. Runyon, No. COA14–817, 2015 WL 241754, at *1 (N.C. Ct. App. Jan. 20, 2015) (same underlying facts). Notably, Defendants only assert that Plaintiffs have failed to identify any threat of prosecution directed to Woodruff individually, not that no prosecutions have occurred generally. (Defs.' Mem. (Doc. 13) at 7.) Defendants further argue that Plaintiffs' allegations lack specificity; however, Plaintiffs are not required to plead the specific name of the locations they wish to visit. The complaint alleges that Woodruff wishes to visit "recreation parks," (Compl. (Doc. 1) ¶ 95), and North Carolina has recently prosecuted registered sex offenders under subsection (a)(3) for being present at parks. See Daniels, 224 N.C. App. 608, 741 S.E.2d 354; Runyon, 2015 WL 241754. Finally, Defendants do not disavow the intent to prosecute sex offenders under the challenged statutes; nor could they reasonably do so, given the prosecutorial history described above.

Here, notwithstanding that Woodruff has neither been arrested nor taken affirmative steps to visit any restricted locations, this court finds that Woodruff has alleged more than a mere feeling of inhibition in visiting places identified by §§ 14-208.18(a)(3) and (a)(4). The history of past prosecution under subsection (a)(3), the state's active opposition to an order exempting Woodruff from the premises restrictions, and the

-14-

lack of any state disavowal combine to create a credible threat
of prosecution under Driehaus and Holder. Therefore, Woodruff
has standing to challenge subsections (a)(3) and (a)(4), and
Defendant's motion to dismiss these claims for lack of standing
under Fed. R. Civ. P. R. 12(b)(1) will be denied.

### C.   Traceability to the Attorney General's Office

Defendants further argue that any purported injury is not
traceable to conduct by the North Carolina Attorney General's
Office because the Attorney General is only authorized to
prosecute alleged criminal acts upon request from the relevant
district attorney. (See Defs.' Mem. (Doc. 13) at 9.) For that
reason, Defendants contend that, "at a minimum, the claims
against the North Carolina Attorney General should be dismissed
pursuant to Rule 12(b)(1) for failure to ever be able to
establish the second prong of the case-or-controversy test."
(Id.) Plaintiffs do not appear to dispute that their injuries
are traceable only to the individual district attorneys, rather
than to the Attorney General's Office. (See Pls.' Resp. (Doc.
15) at 7–8.)

Here, it appears that ultimate prosecutorial decision-
making resides with the local district attorneys and not the
North Carolina Attorney General. Therefore, the facts in this
case are the inverse of those in Bennett v. Spear, 520 U.S. at

167–71, in that plaintiffs seek to sue a subordinate government body that can take potentially injurious action only upon the direction of others. Had Plaintiffs alleged that the district attorneys actually instructed the North Carolina Attorney General's office to investigate or prosecute Woodruff for a potential violation of § 14-208.18(a)(3) or (a)(4), this injury would be fairly traceable to both the directing district attorney and the Attorney General's office, under Bennett. However, because Plaintiffs bring a pre-enforcement challenge to the premises restrictions, the proper defendants in this case are the "state officials empowered to enforce [that] law." Diamond v. Charles, 476 U.S. 54, 64 (1986); see also Nova Health Sys. v. Gandy, 416 F.3d 1149, 1158 (10th Cir. 2005) ("[A]n official who is charged with enforcing a state statute on behalf of the entire state is a proper defendant, so long as the plaintiff shows an appreciable threat of injury flowing directly from the statute."); Mobil Oil Corp. v. Attorney Gen. of Va., 940 F.2d 73, 76–77 (4th Cir. 1991). Plaintiffs apparently concede that only the district attorneys are empowered to initiate prosecutions under the challenged statutes. Therefore, this court finds that all claims against Defendant Joshua Stein, in his official capacity as the Attorney General of the State of

North Carolina, should be dismissed for lack of standing
pursuant to Fed. R. Civ. P. 12(b)(1).

### D.  **Organizational Standing**

Plaintiff NC RSOL, as an organization, may have standing to
sue either on its own behalf or "as the representative of its
members." Warth v. Seldin, 422 U.S. 490, 511 (1975). To
establish independent organizational standing, NC RSOL must
demonstrate "concrete and demonstrable injury to the
organization's activities . . . [rather] than simply a setback
to the organization's abstract social interests." Havens Realty
Corp. v. Coleman, 455 U.S. 363, 379 (1982). The complaint
alleges only that NC RSOL is suing "on behalf of its members"
and "to protect the interests of its members," (Compl. (Doc. 1)
¶¶ 19, 46), but does not describe how the challenged statutory
provisions work concrete injury to the organization's objectives
(as opposed to the constitutional rights of its individual
members). Therefore, this court finds that NC RSOL can establish
standing to sue only in a representative capacity.

For an organization to have representative standing, it
"must allege that its members, or any one of them, are suffering
immediate or threatened injury as a result of the challenged
action of the sort that would make out a justiciable case had
the members themselves brought suit." Warth, 422 U.S. at 511. It

-17-

appears that Woodruff is not a member of NC RSOL. The complaint identifies only one individual member of NC RSOL, John Doe 2, (see Compl. (Doc. 1) ¶ 45), and Plaintiff John Doe 2 has voluntarily dismissed his claims in this case.

This court finds the allegations in the complaint insufficient to establish an imminent injury under N.C. Gen. Stat. § 14-208.18(a)(2) to any individual NC RSOL member other than John Doe 2. Specifically, the portion of the complaint that describes Plaintiffs' challenge to subsection (a)(2) mentions only John Doe 2 and not any other NC RSOL member. (See Compl. (Doc. 1) ¶¶ 67-81.) John Doe 2's voluntary dismissal excises his subsection (a)(2) allegations from the complaint. See, e.g., In re Matthews, 395 F.3d 477, 480 (4th Cir. 2005) ("[A] dismissal without prejudice [under Rule 41] operates to leave the parties as if no action had been brought at all.") (internal quotation marks omitted); Webb v. Nolan, 361 F. Supp. 418, 420 (M.D.N.C. 1972) ("[T]he plaintiff . . . submitted to a voluntary dismissal. At this stage the situation was the same as if the suit had never been filed."); aff'd, 484 F.2d 1049 (4th Cir. 1973). Because John Doe 2's voluntary dismissal means this court must consider the allegations as if his individual claims were never filed, all allegations relating to John Doe 2 are null and

void and cannot be used by the remaining Plaintiffs to establish standing.

While other NC RSOL members may be subject to subsection (a)(2), Plaintiffs have failed to allege that any member (other than John Doe 2) is subject to this provision, wishes to visit restricted locations, and would do so but for the threat of prosecution. Because Plaintiffs have failed to allege facts that establish an injury in fact to any individual member by operation of N.C. Gen. Stat. § 14-208.18(a)(2), Plaintiff NC RSOL lacks representative standing to challenge this specific subsection and this claim will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). NC RSOL does have representative standing, under the Warth test, to challenge subsections (a)(3) and (a)(4) based on the alleged injury to Woodruff.

## IV. **SOVEREIGN IMMUNITY**

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit . . . against one of the United States . . . ." U.S. Const. amend. XI. The Supreme Court has interpreted this restriction to generally prohibit any state from being sued by an individual without the state's consent. See, e.g., Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 13 (1890) ("It is inherent in the nature of sovereignty not to

be amenable to the suit of an individual without its consent."). However, the Supreme Court has also long recognized an exception to this general rule: state officials are stripped of immunity and subject to lawsuits for declaratory or injunctive relief, when these suits are based on the act of enforcing an allegedly unconstitutional state statute. Ex Parte Young, 209 U.S. 123, 159 (1908) ("The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity."); see also Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 274–77 (1997) (noting that the Ex Parte Young exception generally applies to abrogate sovereign immunity when the plaintiff's claim for injunctive relief arises under federal law; "where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar").

Here, Defendants argue that Plaintiffs' claims are subject to dismissal due to sovereign immunity, notwithstanding Ex Parte Young. First, Defendants assert that the state officials named in the case are not "'persons' within the meaning of § 1983 who have engaged in a violation of the U.S. Constitution." (Defs.'

Mem. (Doc. 13) at 4.) Second, Defendants contend there is no threatened or ongoing violation of federal law as required by Ex Parte Young. (Id. at 4-5.) Because it is "entirely speculative as to whether any District Attorney will ever prosecute or request the North Carolina Attorney General to prosecute" Woodruff under the premises restrictions, Defendants urge this court to apply sovereign immunity and dismiss the claims. (Id.)

Defendants' sovereign immunity argument overlaps substantially with the standing analysis. This court has found, as described above, that there is a credible threat that §§ 14-208.18(a)(3) and (a)(4) might be used to prosecute Woodruff if he visits any location listed in the statute. The facts surrounding this case demonstrate that, not only do "state officials stand ready to perform their general duty to enforce laws," (Defs.' Mem. (Doc. 13) at 4 (quoting Doe v. Duling, 782 F.2d 1202, 1206 (4th Cir. 1986))), but state officials have recently prosecuted sex offenders for violating the exact same statute challenged here. Further, the state actively opposed a judicial order that would have exempted Woodruff from the premises restrictions.

Ex Parte Young requires only "a straightforward inquiry into whether a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

Coeur d'Alene Tribe, 521 U.S. at 296 (O'Connor, J., concurring).
The relief requested in this case is clearly prospective:
Plaintiffs ask this court to enjoin Defendants from enforcing
N.C. Gen. Stat. §§ 14-208.18(a)(3) and (a)(4) in the future,
rather than suing for damages based on past injury. See Verizon
Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002). The
alleged violation here is also ongoing, because Woodruff is
reasonably deterred from engaging in certain conduct based on
the state's past actions and prosecutorial decisions and
continues to be deterred so long as the law remains on the books
and the state continues to actively prosecute offenders. See
Allen v. Cooper, 895 F.3d 337, 354-55 (4th Cir. 2018), cert.
granted, ____ U.S. ____, 139 S. Ct. 2664 (2019) (stating that
the alleged violation must be ongoing; therefore, the plaintiff
did not establish standing based only "on the asserted
possibility that North Carolina will resume infringing Allen's
copyrights"); DeBauche v. Trani, 191 F.3d 499, 504-05 (4th Cir.
1999) (noting that Ex Parte Young requires "an ongoing violation
of federal law that can be cured by prospective relief" rather
than "conjecture regarding discrete future events"). Where, as
here, there is a credible threat of enforcement due to law
enforcement actions and past prosecutions, this court finds that
a future injury is not merely hypothetical but rather actual and

-22-

ongoing. Therefore, Plaintiffs' claims in this case fall
squarely within the Ex Parte Young doctrine and Defendants'
motion to dismiss for lack of personal jurisdiction based on
sovereign immunity will be denied.

## V.   ABSTENTION

Defendants argue, under two different legal theories, that
this court should abstain from ruling on the federal
constitutionality of N.C. Gen. Stat. §§ 14-208.18(a)(3) and
(a)(4). First, Defendants contend that this court should abstain
under the Pullman doctrine because no North Carolina court has
yet interpreted the post-amendment version of § 14-208.18(a)(3)
and "state court clarification might serve to avoid a federal
constitutional ruling." (Defs.' Mem. (Doc. 13) at 10 (quoting
Nivens v. Gilchrist, 444 F.3d 237, 245 (4th Cir. 2006).) Second,
Defendants argue that this court should abstain under Burford
because the challenged statutes are "are of substantial
importance to the safety of the citizens in North Carolina and
to the State's ability to exercise its police powers." (Id. at
10-11.) This court will address each of these arguments in turn.

### A.   *Pullman* Abstention

The Pullman abstention doctrine is applicable only when
special circumstances, such as "the susceptibility of a state
statute of a construction by the state courts that would avoid

or modify the constitutional question," are present. <u>Zwickler v. Koota</u>, 389 U.S. 241, 248–49 (1967); <u>see also</u> <u>R.R. Comm'n of Tex. v. Pullman Co.</u>, 312 U.S. 496, 501–02 (1941). The central question is whether a state court decision interpreting the relevant law is likely to negate any federal constitutional issue. <u>See</u> <u>Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.</u>, 710 F.2d 170, 174–75 (4th Cir. 1983). If so, it may appropriate for a federal court to defer adjudication of the dispute. To abstain under <u>Pullman</u>, this court must find that there exists a novel issue of state law, that the statute is "amenable to a state court interpretation which could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim[, . . . and] that an erroneous construction of state law by the federal court would disrupt important state policies." <u>Planned Parenthood of Cent. N.J. v. Farmer</u>, 220 F.3d 127, 149–50 (3d Cir. 2000) (internal quotation marks omitted) (quoting <u>Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman</u>, 99 F.3d 101, 106 (3d Cir. 1996)).

However, <u>Pullman</u> abstention is generally inappropriate in a First Amendment overbreadth challenge because "to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect."

_Zwickler_, 389 U.S. at 252; _see also_ _Expressions Hair Design v._

_Schneiderman_, 581 U.S. ____, ____, 137 S. Ct. 1144, 1157 (2017)

("[T]his Court has described abstention as particularly

problematic where, as here, a challenge to a state statute rests

on the First Amendment."). Further, in the context of a

vagueness challenge, "abstention [is] permissible only where the

case turns on the applicability of a state statute or regulation

to a particular person or a defined course of conduct," and not

where the sole state-law question is a potential "narrowing

construction" of the statute's substantive provisions. _Educ._

_Servs._, 710 F.2d at 175 (internal quotation marks omitted).

Finally, the Supreme Court has suggested that the _Pullman_

doctrine is of limited applicability generally, because a

federal court may certify disputed questions of state law to the

highest court of the relevant state. _Arizonans for Official_

_English v. Arizona_, 520 U.S. 43, 75–76 (1997); _see also_ _Colo._

_River Water Conservation Dist. v. United States_, 424 U.S. 800,

813 (1976) (stating that abstention is permitted only in

"exceptional circumstances").

        Plaintiffs' challenges here rest on both First Amendment

overbreadth and vagueness. This court finds that _Pullman_

abstention is inappropriate for Plaintiffs' First Amendment

claims, due to the Supreme Court's cautionary statements

regarding abstention in this context and the risk that state court proceedings may prolong the allegedly unconstitutional deterrent effect of the statute. See Schneiderman, 137 S. Ct. at 1157. With regard to the vagueness challenge, the only state law resolution here would be a limiting construction of the premises restriction in § 14-208.18(a)(3). Defendants do not argue that a state court might find the statute as a whole inapplicable to Woodruff; rather, it is undisputed that Woodruff is a registered sex offender subject to (a)(3). There is also little chance that any narrow state court interpretation of the phrase "frequently congregate" would render Plaintiffs' vagueness challenge moot. A North Carolina state court might provide some clarification regarding the legislative intent behind this phrase, but a state court can neither catalogue every location that falls within the statute's intended scope, nor can it "apply[] 'judicial surgery' . . . [or] completely rewrite [the] statutes." Farmer, 220 F.3d at 150. Notably, Defendants have not suggested any clarifying interpretation that might save the statute from a vagueness challenge. This court declines to take the extraordinary step of abstaining under the Pullman doctrine.

**B.** ***Burford* Abstention**

Defendants next argue that abstention is required by Burford. See Burford v. Sun Oil Co., 319 U.S. 315, 332 (1943)

("These questions of regulation of the industry by the State
administrative agency, whether involving gas or oil prorationing
programs or Rule 37 cases, so clearly involves basic problems of
Texas policy that equitable discretion should be exercised to
give the Texas courts the first opportunity to consider them.").
A federal court should abstain under Burford only:

> (1) when there are difficult questions of state law
> bearing on policy problems of substantial public
> import whose importance transcends the result in the
> case then at bar; or (2) where the exercise of federal
> review of the question in a case and in similar cases
> would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of
> substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,
491 U.S. 350, 361 (1989) (quoting Colorado River, 424 U.S. at
814) (internal quotation marks omitted).

"Burford is concerned with protecting complex state
administrative processes from undue federal interference." Id.
at 362. In this vein, the circuit courts have frequently found
that application of the Burford doctrine is appropriate only
"when federal adjudication would unduly intrude upon" a state's
administrative machinery. Martin v. Stewart, 499 F.3d 360, 364
(4th Cir. 2007) (internal quotation marks omitted); see also
Baggett v. Dep't of Prof'l Regulation, Bd. of Pilot Comm'rs, 717
F.2d 521, 524 (11th Cir. 1983) (stating that Burford abstention

is justified by "the need for protection of the state's comprehensive regulatory scheme").

While this court does not dispute that restricting the presence of registered sex offenders at locations where children may be present is an important state public policy objective, the regulatory interference rationale that animated Burford is simply not present on the facts here. North Carolina has not established any administrative process by which registered sex offenders may petition to be present at locations potentially within the scope of § 14-208.18(a). In fact, the lack of such a regulatory regime is part of the reason that Woodruff has standing to bring these claims in the first place. Further, a ruling from this court would not undermine uniformity or efficiency or invite into federal court disputes that ordinarily might be handled by some administrative tribunal. Cf. First Penn-Pac. Life Ins. Co. v. Evans, 304 F.3d 345, 349 (4th Cir. 2002) (stating that the risk of federal court interference in a state-administered "comprehensive scheme for liquidating insolvent state-chartered savings and loan associations" presented an appropriate case for Burford abstention). If this court ultimately rules that any aspect of § 14-208.18(a) is unconstitutional, the state will simply need to re-write its laws. In other words, this is merely a garden-variety challenge

to the federal constitutionality of a state statute. There are no special factors that counsel abstention, and therefore this court declines to abstain under <u>Burford</u>.

## VI. **FAILURE TO STATE A CLAIM – ANALYSIS**

### A. <u>Claim 1</u>

In Claim 1, Plaintiffs challenge the premises restrictions set forth in N.C. Gen. Stat. § 14-208.18(a)(2), which prohibits certain registered sex offenders (those convicted of an offense involving a minor or those found to pose a danger to minors specifically) from being knowingly present "[w]ithin 300 feet of any location intended primarily for the use, care or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors . . . ." (Compl. (Doc. 1) ¶ 54(2). Plaintiffs allege that John Doe 2 "would go to such places, for the purpose of exercising First Amendment liberties, if not for the ban imposed by N.C.G.S. § 14-208.18(a)(2) and his resulting fear of arrest and prosecution." (Compl. (Doc. 1) ¶ 81.) Claim 1, however, contains no allegations regarding Woodruff. Further, it appears that Woodruff is not subject to the restrictions in (a)(2) because he has not committed any offense against a minor and a state judge has determined that he does not pose a threat to minors. See N.C. Gen. Stat. § 14-208.18(c)(2); (Compl. (Doc. 1)

¶ 27.) As described above, Plaintiffs have failed to allege any particularized injury under subsection (a)(2) to any individual NC RSOL member other than John Doe 2, who is no longer a party to this case.

To establish standing to challenge the premises restriction in subsection (a)(2), Plaintiffs must show a real, imminent threat of harm. Here, no Plaintiff is directly subject to the restrictions in subsection (a)(2) and thus no Plaintiff faces an imminent injury due to the statute's operation. Plaintiffs have failed to establish standing to challenge N.C. Gen. Stat. § 14-208.18(a)(2), and Defendants' motion to dismiss this claim will be granted.

B.    **Overbreadth (Claims 2 and 4)**

1.    **Legal Framework**

Plaintiffs allege that N.C. Gen. Stat. §§ 14-208.18(a)(3) and (a)(4) are both unconstitutionally overbroad in violation of the First Amendment.

In the First Amendment context only, the Supreme Court "has altered its traditional rules of standing to permit . . . 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)

(quoting Dombrowski v. Pfister, 380 U.S. 479, 486 (1965)). To bring a claim under this doctrine, the plaintiff must plausibly allege that "the overbreadth of a statute [is] not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615. A statute is unconstitutionally overbroad only when it is both not susceptible to a limiting construction that avoids unconstitutional applications and not severable, such that the unconstitutional portion may be excised. See New York v. Ferber, 458 U.S. 747, 769 n.24 (1982). If these criteria are met, then the statute as a whole is struck down as overbroad. Invalidating a statute as overbroad is "strong medicine" justified only by the "concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech — especially when the overbroad statute imposes criminal sanctions." Virginia v. Hicks, 539 U.S. 113, 118–20 (2003) (internal quotation marks omitted).

The level of scrutiny appropriate in a First Amendment challenge turns on the law's objective. As the Fourth Circuit has explained:

> If the regulation was adopted to burden disfavored
> viewpoints or modes of expression, a court applies
> strict scrutiny. If, by contrast, the regulation was
> adopted for a purpose unrelated to the suppression of
> expression — e.g., to regulate conduct, or the time,

-31-

> place, and manner in which expression may take place —
> a court must apply a less demanding intermediate
> scrutiny.

Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 512–13 (4th Cir.

2002). In other words, "a content-neutral measure that imposes

incidental burdens on speech . . . is . . . subject to

intermediate First Amendment scrutiny." Satellite Broad. and

Commc'ns Ass'n v. F.C.C., 275 F.3d 337, 355 (4th Cir. 2001). A

law is content-neutral for First Amendment purposes when it is

"justified without reference to the content of the regulated

speech." Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288,

293 (1984); see also Ward v. Rock Against Racism, 491 U.S. 781,

791–92 (1989) (finding that a noise-control ordinance was

content-neutral because it was justified by "the city's desire

to control noise levels at bandshell events . . . [and had]

nothing to do with content") (internal quotation marks and

citation omitted).

Under the intermediate scrutiny standard, a law should be

upheld "if it furthers an important or substantial governmental

interest; if the governmental interest is unrelated to the

suppression of free expression; and if the incidental

restriction on alleged First Amendment freedoms is no greater

than is essential to the furtherance of that interest." <u>United States v. O'Brien</u>, 391 U.S. 367, 377 (1968).[6]

## 2. **Analysis**

Here, there appears to be no dispute that §§ 14-208.18(a)(3) and (a)(4) are content-neutral laws.[7] Both subsections apply regardless of the nature of the regulated speech. In other words, they apply regardless of the reason that a registered sex offender might wish to visit a restricted location. And, as Defendants argue, the laws are justified by

---

[6] The freedom of speech and the freedom to peaceably assemble are both found in the First Amendment. The Supreme Court has consistently articulated a single legal standard for "First Amendment rights" generally. <u>See, e.g.</u>, <u>City of Chicago v. Morales</u>, 527 U.S. 41, 54 (1999); <u>Broadrick</u>, 413 U.S. at 611; <u>De Jonge v. Oregon</u>, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to those of free speech and free press."). Therefore, the same legal framework applies to Plaintiffs' speech and assembly challenges.

[7] Plaintiffs allege that the challenged statutes restrict their freedom of religion. (<u>See</u> Compl. (Doc. 1) ¶¶ 69, 87, 95.) Although the laws may impact upon the practice of religion and thus relate to the Free Exercise Clause, they are still content-neutral and subject to intermediate (rather than strict) scrutiny under the First Amendment. Plaintiffs do not allege, nor could they, that the laws are specifically directed to regulate religious, rather than other forms of, expression. <u>Cf. Tucker v. State of Cal. Dep't of Educ.</u>, 97 F.3d 1204, 1209–10 (9th Cir. 1996) ("Because the orders here regulate only a certain type of expression, based on its <u>content</u> — religious expression — they are not content neutral."). Rather, the laws at issue apply to a broad range of conduct regardless of subject matter.

the goal of "public protection" due to the "risk of recidivism by sex offenders." (Defs.' Mem. (Doc. 13) at 11–12.) This is certainly an important state interest; in fact, this court can think of few interests more important and worthwhile than protecting children. The question, then, is whether Plaintiffs have plausibly alleged that the laws impose a restriction on First Amendment freedoms that is greater than necessary to further the legitimate state interest in public safety and protection.

The prior version of N.C. Gen. Stat. § 14-208.18(a)(3) was challenged and found to be plausibly overbroad at the motion to dismiss stage.[8] See Cooper I, 40 F. Supp. 3d at 679–81. The district court held that the plaintiffs had plausibly alleged that subsection (a)(3) was overbroad because it "operates to exclude those subject to § 14-208.18's restrictions from many traditional public fora at all times (regardless of the absence of children) and without exception for public demonstrations,

---

[8] It appears that neither the plaintiffs nor defendant in that case moved for summary judgment on the overbreadth of subsection (a)(3), but instead argued only a vagueness theory at the summary judgment stage. The district court held that subsection (a)(3) was unconstitutionally vague and enjoined the state from enforcing that portion of the law, see Does v. Cooper, 148 F. Supp. 3d 477, 505–06 (M.D.N.C. 2015) ("Cooper II"), and the Fourth Circuit affirmed that ruling. See Cooper III, 842 F.3d 833 (4th Cir. 2016).

protests, or other ways of exercising one's free speech rights."
Id. at 681. Subsection (a)(3) was then amended, in part to add
the phrase "when minors are present." See 2016 N.C. Sess. Laws
102 (H.B. 1021).

This court finds that the amended version of subsection
(a)(3) arguably addresses the district court's concerns in
Cooper I. While the new statute may be unconstitutionally vague
regarding what it means for minors to "frequently congregate,"
the law, by its own terms, applies only when minors are present
at any listed location. Therefore, a registered sex offender may
generally exercise his or her First Amendment rights (including
the freedom of association and the freedom of religion) and is
restricted from doing so only when minors are present. To
protect minors and the public from sex offender recidivism while
burdening the minimal amount of protected speech, the state can
presumably address specific situations where the risk of
recidivism is demonstrably high. The current version of § 14-
208.18(a)(3) appears to meet this requirement in part, by
covering only conduct likely to bring a sex offender into
contact with or proximity of a minor. The statute does not
contain an explicit exception for demonstrations and protests.
However, this court finds that the sample location list
mitigates this omission because the listed locations are not the

type of places that traditionally host events of public debate or political speech.

However, while the state has solved the specific issue identified by the district court in Cooper I, at least one significant problem remains. § 14-208.18(a)(3) applies to individuals, such as Woodruff, who have been convicted of sexual offenses that do not involve a minor child. Specifically, subsection (a)(3) applies to all offenses listed in Chapter 7B of the North Carolina criminal code, see N.C. Gen. Stat. § 14-208.18(c)(1)(a), including numerous offenses that can be committed against an adult victim. Defendants have, at this point, presented no evidence regarding the risk posed to minors by sex offenders convicted of assaulting non-minors. The plainly legitimate, constitutional sweep of subsection (a)(3) appears to cover only sex offenders with minor victims, as these offenders logically pose a specific threat to children. The statute is at least plausibly overbroad because, in its current form, it applies to all sex offenders and even those whom a judge has determined pose no specific risk to minors (such as Woodruff). (See Compl. (Doc. 1) ¶ 27.) If Defendants assert a broader public safety rationale that goes beyond the protection of children to the protection of the public at large, then the statute appears to be potentially too narrow. In other words, if

Defendants are equally concerned that sex offenders may re-offend by assaulting adult victims, as opposed to targeting minors specifically, then there is no rational basis to apply the premises restrictions only to locations frequented by minors.

The statute appears, at least on its face, to plausibly burden more speech than is necessary to achieve the state's legitimate objective of protecting children.[9] At the current stage of proceedings, Defendants have not shown any justification for subjecting offenders such as Woodruff to the restrictions of subsection (a)(3). Therefore, Defendants' motion to dismiss the overbreadth challenge to N.C. Gen. Stat. § 14-208.18(a)(3) will be denied.

N.C. Gen. Stat. § 14-208.18(a)(4) was enacted in 2016 and was not challenged in the prior litigation. While Defendants do not put forth an explicit rationale for subsection (a)(4), this court presumes that the objective is the same as for subsection (a)(3): to protect minors and guard against sex offender recidivism. Plaintiffs allege that state "fairs typically host classes, lectures, competitions, concerts, entertainment shows,

---

[9] It appears that other states with similar premises restrictions have chosen to limit these statutes to apply only to sex offenders convicted of offenses involving a minor child. See, e.g., Mo. Stat. § 566.149; Va. Code § 18.2-370.2.

and . . . provide opportunities to meet and interact with elected representatives and candidates for political office." (Compl. (Doc. 1) ¶¶ 110–11.) Defendants neither refute these allegations nor provide any rationale for why subsection (a)(4) cannot be more narrowly tailored to achieve the objective of public protection. Specifically, Defendants fail to explain why subsection (a)(4) cannot (1) apply only to those portions of fairgrounds designed primarily for "use, care or supervision of minors," or (2) apply only when minors are present in those areas. Plaintiffs have plausibly alleged that subsection (a)(4) is overbroad by burdening the ability to engage in educational and political activities beyond what is necessary to protect the public. Because Defendants have failed to carry their burden of demonstrating that the law is appropriately tailored, and in fact do not mention subsection (a)(4) anywhere in their supporting brief, this court finds that Plaintiffs have plausibly alleged a facial overbreadth claim as to N.C. Gen. Stat. § 14-208.18(a)(4), and Defendants' motion to dismiss that claim will be denied.

## C. Vagueness (Claim 3)

### 1. Legal Framework

Plaintiffs allege that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague. "Vagueness may invalidate a criminal

law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56 (1999); see also Hardwick v. Heyward, 711 F.3d 426, 442 (4th Cir. 2013). With regard to insufficient notice, the Supreme Court has stated "that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32-33 (1963). The arbitrary enforcement category, on the other hand, applies to laws that "fail[] to provide such minimal guidelines . . . [that they] permit a standardless sweep that allowed policemen, prosecutors, and juries to pursue their personal predilections." Kolender v. Lawson, 461 U.S. 352, 358 (1983) (quoting Smith v. Goguen, 415 U.S. 566, 575 (1974)) (internal quotation marks omitted).

Plaintiffs allege that subsection (a)(3) is unconstitutionally vague in the "sufficient notice" category. (Compl. (Doc. 1) ¶ 100.) Specifically, Plaintiffs allege that subsection (a)(3) fails to put a person of ordinary intelligence on notice of (1) "how many minors must be present or otherwise what it means for minors to 'congregate' in a given area" and

(2) "how often minors must 'congregate' in order to do so

'frequently.'" (Id. ¶¶ 102–03.) Defendants argue that this claim

should be dismissed "[b]ecause Plaintiff cannot demonstrate

N.C.G.S. § 14-208.18(a)(3) is impermissibly vague in all its

applications." (Defs.' Mem. (Doc. 13) at 15 (citing Vill. of

Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S.

489, 497 (1982).) The Supreme Court in Hoffman was discussing

facial versus as-applied challenges and concluded that

"legislation is not facially overbroad or vague if it does not

reach constitutionally protected conduct and is reasonably clear

in its application to the complainant." Hoffman, 455 U.S. at

505. The Court held that, if a plaintiff is unable to

demonstrate that they personally are injured by the alleged

vagueness, then that plaintiff "must demonstrate that the law is

impermissibly vague in all of its applications" to mount a

facial challenge. Id. at 497.

### 2.  Analysis

Here, Woodruff alleges that he is personally subject to

subsection (a)(3), is "unclear as to the meaning and extent of

N.C.G.S. § 14-208(a)(3) [sic]" and has refrained from visiting

certain locations due to this uncertainty. (Compl. (Doc. 1)

¶¶ 105–06.) As Plaintiffs correctly note, the Fourth Circuit in

Cooper III explained that, "where a statute specifies no

standard, the fact that it has one or more clearly
constitutional applications cannot save it" when the statute is
unconstitutionally vague <u>as applied to the plaintiff</u>. <u>Cooper
III</u>, 842 F.3d at 842. Because Defendants did not file a reply
brief, this court is left with nothing to refute this argument
and therefore concludes that <u>Hoffman</u> is inapplicable and that
Plaintiffs are not required to demonstrate that subsection
(a)(3) is unconstitutionally vague in <u>all</u> applications to
survive a motion to dismiss. Rather, in an as-applied challenge,
Plaintiffs must only plausibly allege that subsection (a)(3)
fails to place a person of ordinary intelligence on notice as to
what conduct is prohibited.

In <u>Cooper I</u>, a former judge in this district found, at the
motion to dismiss stage, that the prior version of N.C. Gen.
Stat. § 14-208.18(a)(3) was potentially vague because of the
phrase "regularly scheduled." <u>Cooper I</u>, 40 F. Supp. 3d at 684.
Specifically, the court observed that "[t]here is no indication
how often such programming must occur in order to be 'regularly
scheduled' or how many minors must gather to qualify." <u>Id.</u> The
court further noted that "it is unclear how often minors must
gather for such programming — whether minors should attend most
of the time when such programming occurs or whether it is
sufficient that two minors gathered once for such programming."

Id. The Fourth Circuit ultimately agreed, finding that "a
reasonable person, whether a restricted sex offender or a law
enforcement officer, cannot reasonably determine (1) whether a
program for minors is 'regularly scheduled' or (2) what places
qualify as those 'where minors gather.'" Cooper III, 842 F.3d at
843. The North Carolina legislature then amended the statute,
replacing "regularly scheduled . . . programs" with "frequently
congregate," adding a list of specific examples, and limiting
the restrictions to apply only "when minors are present." See
2015 N.C. Sess. Laws 102 (H.B. 1021).

　　　This court finds that the 2016 amendment effectively
addressed two, but not all three, of the vagueness concerns
raised in the Cooper cases. By including a list of specific
examples, the law now places a person of ordinary intelligence
on notice about the types of places that the provision is
intended to cover and differentiates the "places" covered by
subsection (a)(3) from the "places" and "locations" covered by
subsections (a)(1) and (a)(2). This court further finds that the
law is no longer vague as to the number of minors who must be
present. Rather, the use of the word "congregate" and the word
"minors" (as opposed to "a minor or minors") clearly suggests
that the restriction in subsection (a)(3) applies only when more
than one minor is present at such a location.

However, the phrase "frequently congregate" suffers from the same flaw as the phrase "regularly scheduled." There is, quite simply, no guidance or clarification in the law regarding how frequently minors must congregate at a certain place to bring that place within the scope of § 14-208.18(a)(3). It certainly cannot be that the presence of two minors at a swimming pool on a single occasion qualifies as frequent congregation.[10] But the law does not specify how frequently minors must be present, nor does it explain whether these occasions must be scheduled classes or activities or can be ad hoc gatherings.[11] Therefore, this court finds that Plaintiffs have plausibly alleged that § 14-208.18(a)(3) is unconstitutionally vague as to the definition of "frequently

---

[10] See Webster's Third New International Dictionary (3d ed. 1986) (defining "frequent" as "often repeated or occurring").

[11] A brief survey of state laws restricting sex offender presence at specific locations reveals that these statutes generally prohibit sex offenders from being present at a defined list of places rather than using an open-ended catch-all term. See, e.g., Tenn. Code § 40-39-211(d) (restricting presence at "any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field"); 720 Ill. Comp. Stat. § 5/11-9.3 (prohibiting sex offender presence at any school, school-owned property, or school bus stop; stating that sex offenders may not be present at any park "when persons under the age of 18 are present . . . [and the sex offender intends] to approach, contact, or communicate with a child under 18 years of age, unless the offender is [the] parent or guardian of [that] person").

-43-

congregate," and Defendant's motion to dismiss this claim will

be denied. Plaintiffs have not, however, plausibly alleged that

the statute is vague regarding the number of minors who must be

present at a qualifying location; this claim will be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6).

## VII. <u>CONCLUSION</u>

This court finds that the following claims should survive:

(1) Plaintiffs' claim that N.C. Gen. Stat. § 14-208.18(a)(3) is

overbroad in violation of the First Amendment, (2) Plaintiffs'

claim that N.C. Gen. Stat. § 14-208.18(a)(3) is

unconstitutionally vague as to the definition of "frequently

congregate," and (3) Plaintiffs' claim that N.C. Gen. Stat.

§ 14-208.18(a)(4) is overbroad in violation of the First

Amendment. Defendants' motion to dismiss will be granted as to

Claim 1 and the portion of Claim 3 alleging that subsection

(a)(3) is unconstitutionally vague regarding the number of

minors who must be present at one of the specified locations.

This court further notes that, up to this point, Defendants

have defended the relevant statutes only by invoking general

public safety concerns and have provided neither evidence nor

statistics. (<u>See</u> Defs.' Mem. (Doc. 13) at 11–12.) As the Fourth

Circuit stated in <u>Cooper III</u>, Defendants must provide more

specific evidence regarding the risk of recidivism to

successfully defend the remaining claims at the summary judgment stage. See Cooper III, 842 F.3d at 847 ("Without empirical data or other similar credible evidence, it is not possible to tell whether subsection (a)(2) — and specifically its application to offenders with only adult victims — responds at all to the State's legitimate interest in protecting minors from sexual assault.").

For the foregoing reasons, this court finds that Defendants' motion to dismiss should be granted in part and denied in part as set forth herein.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss, (Doc. 12), is **GRANTED IN PART AND DENIED IN PART**, in that: the motion to dismiss for lack of standing is **GRANTED** as to Claim 1, **GRANTED** as to all claims against Defendant Joshua Stein, in his official capacity as Attorney General of the State of North Carolina, and **DENIED** as to Claims 1–4 against the Defendant District Attorneys; the motion to dismiss on the grounds of sovereign immunity or abstention is **DENIED**; and the motion to dismiss for failure to state a claim is **GRANTED** as to the portion of Claim 3 relating to the number of minors who must be present, and **DENIED** as to Claims 2 and 4 and the portion of Claim 3 relating to the meaning of "frequently congregate."

**IT IS FURTHER ORDERED** that Claim 1 and all claims against Defendant Joshua Stein, in his official capacity as Attorney General of the State of North Carolina, are **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(1), and that the portion of Claim 3 relating to the number of minors who must be present is **DISMISSED** pursuant to Fed. R. Civ. P. R. 12(b)(6).

This the 26th day of August, 2019.

_____
United States District Judge